JAMES G. CAYON *vs.* CITY OF CHICOPEE & another.

Hampden. October 6, 1971. — December 14, 1971.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

*Eminent Domain,* What constitutes taking, Injury to property without taking, Right to damages. *Constitutional Law,* Due process of law.

Allegations of a petition for land damages, that failure of the respondents city and redevelopment authority officially to take property of petitioner after publicly announcing that it was included in an urban redevelopment area and would be taken for urban redevelopment purposes, thereby decreasing the value of the petitioner's property and depriving him of the opportunity to use or sell the land or pay the taxes levied upon it, did not show a constructive taking for which compensation must be paid under G. L. c. 79, § 10, or the guarantees of due process of law in the Constitutions of the United States and the Commonwealth. |608-609, 612|

Discussion of constructive taking cases involving a substantial interference with the use and enjoyment of private property. |609-610|
Discussion of cases denying compensation for loss in property value resulting from disclosure of proposed condemnation action. |610-612|

PETITION for assessment of damages filed in the Superior Court on May 23, 1968.

The case was heard by *Tisdale*, J.

*Gil A. Abramson* for the petitioner.

*Edward F. Valego & John P. Moylan*, for the City of Chicopee, *& Robert L. Nowak*, for the Chicopee Redevelopment Authority, submitted briefs.

HENNESSEY, J. This case involves a petition for assessment of damages alleged to be due the petitioner under G. L. c. 79, § 10, by reason of takings, constructive or otherwise, of land allegedly owned by him. The matter is before us upon the petitioner's exceptions to the sustaining of the plea in bar and the demurrer of the respondent city of Chicopee (the city), and to the sustaining of the demurrer and the plea in abatement of the Chicopee Redevelopment Authority (the authority).

The petition alleged that the petitioner was the owner of certain property located in Chicopee and that each of the respondents has for several years publicly announced that this property was included in the urban redevelopment area, so called, and that the land "would eventually be taken for urban renewal purposes," and further, that after these announcements were made, "the [r]espondents have failed to officially take . . . [the] property." The petition alleged that these acts constituted constructive takings under G. L. c. 79, § 10, that the premature public announcements completely deprived the petitioner of an opportunity to use productively or sell the land or pay the taxes levied upon it, and that the conduct of the respondents with respect to this land deprived the petitioner of the use of his property in violation of both the United States and Massachusetts constitutional guaranties of due process of law.

The petition further alleged that the city entered upon certain property of the petitioner in 1968 and demolished the buildings thereon preliminary to using the land for urban renewal purposes and that such entry and demolition constituted a taking under G. L. c. 79, § 10. The petition also alleged that with respect to one parcel the city by an order of taking, dated May 7, 1968, and duly recorded, did take an interest in said parcel for purposes of drainage construction and made an award of $300 which was not agreed upon by the petitioner and has not been paid to him. Likewise, the petition alleged that with respect to another parcel the city by an order of taking dated December 19, 1967, and duly recorded did take an interest in the parcel for highway purposes and made an award of $625 which was not agreed upon by the petitioner and has not been paid to him.

1. We believe that the allegations in the petition that the respondents' actions in announcing that the petitioner's land would be taken for urban renewal purposes and in failing to execute the takings, thereby decreasing the value of his property and depriving him of the opportunity to use or sell the land or pay the taxes levied upon it, do not disclose a "taking" for which compensation must be paid.[1] The petitioner relies, in part, on G. L. c. 79, § 10. With respect to that section we note that it does not of its own force give a landowner a right to damages where there has been no taking. *Sullivan* v. *Commonwealth*, 335 Mass. 619, 624. *Webster Thomas Co.* v. *Commonwealth*, 336 Mass. 130, 137. The petitioner also relies on the Fifth Amendment to the Constitution of the United States,[2] as applied to the

---

[1] The petition here fails because there was no taking, but this court has previously recognized the principle that, where a taking is made, the damages paid to the landowner should not be affected by any increase or decrease in value caused by knowledge of the taking prior to the effective date. *Lipinski* v. *Lynn Redevelopment Authy.* 355 Mass. 550, 552–554, and cases cited.

[2] "No person shall be . . . deprived of life, liberty or property, without due process of law; nor shall private property be taken for public use, without just compensation."

States, *Malloy* v. *Hogan*, 378 U. S. 1, 4, and art. 10 of the Declaration of Rights of the Constitution of the Commonwealth.[3]  However, our conclusion that the allegations in the petition do not set out sufficient facts to constitute a "taking" precludes relief on constitutional grounds.

It is well settled that a taking of private property for which compensation must be paid is not necessarily restricted to an actual physical taking of the property.  See Nichols, Eminent Domain (Rev. 3d ed.) § 6.1.  This rule has long been recognized in this Commonwealth.  In *Old Colony & Fall River R.R.* v. *County of Plymouth*, 14 Gray, 155, 161, we stated that private property can be "appropriated" to public use "by taking it from the owner, or depriving him of the possession or some beneficial enjoyment of it."  Likewise, the Supreme Court of the United States has stated that "[g]overnmental action short of acquisition of title or occupancy has been held, if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter, to amount to a taking." *United States* v. *General Motors Corp.* 323 U. S. 373, 378. In line with the above rule, we have stated that the taking of an interest in adjacent property thereby limiting access to the owner's property constitutes a compensable taking, *Cann* v. *Commonwealth*, 353 Mass. 71, 75, and that the setting of a building line constitutes an encumbrance on the land in the nature of an equitable easement for the benefit of the public and that, as such, it is a taking of private property for public use.  *Grove Hall Sav. Bank* v. *Dedham*, 284 Mass. 92, 93.

Numerous other cases have held that governmental action amounting to a substantial interference with the

---

[3] Article 10 reads, in relevant part, ". . . no part of the property of any individual, can, with justice, be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people. . . . And whenever the public exigencies require, that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor."

basic rights incident to the ownership of private property constitutes, in effect, a constructive taking. *United States* v. *Kansas City Life Ins. Co.* 339 U. S. 799 (agricultural value of land destroyed by the underflow from a dam). *Griggs* v. *Allegheny County,* 369 U. S. 84 (noise and vibration of frequent and regular airplane flights at low altitudes over the property). *State* v. *Jacobs,* 7 Ariz. App. 396 (impairment of owners' right of access to a highway). *Albers* v. *County of Los Angeles,* 62 Cal. 2d 250 (damage caused by landslides resulting from road construction). *Turcotte* v. *State,* 84 Idaho, 451 (land flooded by water). *Lage* v. *Pottawattamie County,* 232 Iowa, 944 (cutting of banks of drainage ditch permitting water to overflow adjacent land). An examination of all the constructive taking cases indicates that it is a substantial interference with the use and enjoyment of private property which constitutes a taking in the constitutional sense. These cases involve, in our view, interferences of a different nature from those that are alleged in the present case and are, therefore, not controlling.

In *Swampscott* v. *Remis,* 350 Mass. 523, 526–527, a petition for assessment of land damages under G. L. c. 80A, we stated that "[t]he enactment of legislation authorizing the condemnation of property does not constitute a taking, properly defined, which entitles an owner to compensation, nor does the filing of a petition without assuming possession have such an effect. Changes in value due to these causes are no more than incidents of ownership in a jurisdiction such as ours where all land is subject to the exercise of the power of eminent domain." We believe that the above language is applicable to the present case wherein the petition alleged an announcement of a proposed taking, a subsequent decrease in the value of the property and a failure to execute the taking.

We are further convinced of the correctness of our decision by an examination of authorities in other jurisdictions. In *Weintraub* v. *Flood Control Dist. of Maricopa County,* 104 Ariz. 566, 569, where the plaintiffs argued that a public

notice of a possibility that certain property might be taken
for a flood control project constituted inverse eminent do-
main, the court noted, "Other jurisdictions have uniformly
held that the mere publication of the fact that particular or
specified property may be the subject of a future appropria-
tion or condemnation action, or the plotting or planning
thereof, is not a taking or damaging of such property entit-
ling the owner to be compensated therefor." The court,
quoting from *Houston* v. *Biggers*, 380 S. W. 2d 700, 704
(Tex. Civ. App.), further stated, "Even though it might
have, as a practical matter, interfered with the marketability
of the property, it would cause but an incidental damage
which is not compensable. The fact that at some future
time land might be taken under eminent domain, even where
the threatened taking is imminent, is but one of the condi-
tions on which an owner holds property." In *Sorbino* v.
*New Brunswick*, 43 N. J. Super. 554, 569, the court held that
a determination that a certain area was "blighted," the first
step in the eminent domain proceedings, did not constitute
a compensable taking even though the determination had
adversely affected the market value of the property. Fi-
nally, in *Woodland Mkt. Realty Co.* v. *Cleveland*, 426 F. 2d
955, 957–958 (6th Cir.), the plaintiffs alleged that the value
of their leasehold interest had been destroyed by the city's
action in first including the property subject to their lease in
an urban renewal project and then excluding it. "Actions
done in the proper exercise of governmental powers which
do not directly encroach upon private property, though they
may impair its use or value, do not amount to a taking."
The court also pointed out that "damage or loss does not of
itself create a taking. Whether property has been taken for
a public use so as to require just compensation is determined
by the character of the invasion, not by the amount of
damage suffered." See *Hempstead Warehouse Corp.* v.
*United States*, 98 F. Supp 572 (Ct. Cl.); *Franco-Italian
Packing Co.* v. *United States*, 128 F. Supp. 408 (Ct. Cl.);
*Bakken* v. *Montana*, 142 Mont. 166; *Niagara Frontier Bldg.*

*Corp.* v. *State,* 33 App. Div. 2d (N. Y.) 130; *Brook Park* v. *Columbia Rd. Inv. Inc.* 23 Ohio Misc. 363; *Commonwealth Appeal,* 422 Pa. 72 (In re Land for L. R. 1062 and 1068); *Houston* v. *Biggers,* 380 S. W. 2d 700 (Tex. Civ. App.).

We believe that the approach taken in the above cited cases is controlling here. Furthermore, we note that the development of an urban renewal area requires a substantial amount of planning well in advance of the actual construction stage. An important part of that planning involves disclosure to the community of the proposed redevelopment action. See e.g., G. L. c. 121B, § 48, inserted by St. 1969, c. 751, § 1; 42 U. S. C. §§ 1451 (c) (Supp. V, 1965–1969), 1455 (d) (1964). Undoubtedly, one purpose in requiring such disclosure is to afford community groups and property owners an opportunity to persuade the taking authority to alter its plans. To hold that such public announcements, even where they result in a decrease in property values, amount to a compensable taking would frustrate the purposes sought to be achieved by requiring disclosure and would hamper the orderly procedures to be followed in redeveloping blighted areas of the community.

The petition further alleged that the city entered upon three parcels and demolished the buildings thereon. It is unnecessary for us to decide whether such an entry and demolition may in some circumstances constitute a taking, since the present allegations are so brief, vague and conclusory as to be demurrable.[4] In this connection, we observe that the petitioner made no motion to amend his petition, thus supporting the inference that he could not set out his allegations in a more precise and complete manner.

2. It was error to sustain the city's plea in bar. The plea was based solely upon the contention that the petitioner did not own the property, and it appears that it was sustained without evidence or stipulation as to ownership.

---

[4] With respect to these particular allegations, the city stated, in its answer, that the demolition of some buildings was for the purpose of preserving the public health and safety.

Cayon *v.* Chicopee.

3. The demurrers of both the city and the authority were correctly sustained. However, pars. 10 and 11 of the petition apparently alleged takings of interests in the petitioner's land by the city. Paragraph 10 alleged that the city made a taking of an interest in parcel B of the property for purposes of drainage construction. Paragraph 11 alleged that the city made a taking of an interest in parcel E of the property for highway purposes. Even as to the claims made in pars. 10 and 11, however, the allegations of those paragraphs standing alone are insufficient and demurrable. Nevertheless, we conclude that we should give the petitioner an opportunity to assert the claims described in pars. 10 and 11.

4. The petitioner's exceptions as to the authority are overruled and the petition is to be dismissed as to the authority. The petitioner's exception as to the city and concerning the plea in bar is sustained. The petitioner's exception as to the city and concerning the demurrer is overruled, and the petition as against the city is to be dismissed, unless within sixty days after the rescript is filed in the Superior Court, a substitute petition is filed, pursuant to motion allowed by a judge of the Superior Court, appropriately alleging (against the city only) the claims now described in pars. 10 and 11 of the present petition.

*So ordered.*