DANIEL S. FRAM, trustee, *vs.* CITY OF BOSTON & another.

Suffolk.   January 3, 1973. — February 9, 1973.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Equity Jurisdiction,* Assessment of damages for taking.  *Eminent Domain,* What constitutes taking, Beginning proceeding for damages anew.  *Equity Pleading and Practice,* Amendment of suit into proceeding for assessment of damages.

In a suit in equity by the owner of apartment buildings seeking payment by the redevelopment authority of a city of "the fair market value" of the buildings when razed by the city and absorption by the authority of the cost of the razing, allegations of the bill, which showed that no formal taking by the authority had occurred at the time the bill was filed, in substance that the authority's public announcement of a contemplated redevelopment plan and its delay in implementing any such plan caused the plaintiff financial loss failed to show any compensable "taking." [71–72]

G. L. c. 79, § 17, involves the commencement of a new proceeding and is not concerned with the amendment of pleadings in any existing proceeding. [72–73]

Upon appeal from an interlocutory decree sustaining, without leave to amend, the demurrer of the redevelopment authority of a city to a bill in equity by the owner of apartment buildings presently seeking only authority to convert the proceeding into a timely petition for the assessment of damages for an eminent domain taking of the plaintiff's premises by the authority after the bill was filed, and upon appeal from the final decree dismissing the bill, this court (a) ordered the portion of the interlocutory decree denying the plaintiff leave to amend deleted and as so modified affirmed it, and (b) ordered the final decree to be affirmed unless a motion to amend the bill into a petition for the assessment of damages under G. L. c. 79, is filed and allowed by the Superior Court in its discretion. [73–74]

BILL IN EQUITY filed in the Superior Court on April 6, 1967.

A demurrer and the suit were heard by *Tamburello,* J.

*Ralph Davis* for the plaintiff.

*William J. Foley,* Assistant Corporation Counsel, for the City of Boston.

*Arthur G. Coffey* for the Boston Redevelopment Authority.

WILKINS, J.   The plaintiff appeals from final decrees dismissing his amended bill as against the city of Boston (city) and the Boston Redevelopment Authority (authority).   He also appeals from an interlocutory decree sustaining the demurrer of the authority without leave to amend.[1]   There was no error.

The plaintiff alleges that he had been the owner, either in his own name or as trustee, of property in Charlestown consisting of rented apartments.   "[O]n or about 1962 . . . [the authority], a body politic incorporated [*sic*] duly established by the . . . [city], caused to be released to the press of Boston and through their medias [*sic*] of publicity a statement that certain areas of Charlestown was [*sic*] to be subject to a redevelopment plan and that said areas were to be acquired by the . . . [authority]."   The plaintiff's land was within the designated areas.   Following the announcements, tenants vacated the plaintiff's premises; the plaintiff spent large sums of money to attract tenants but could not maintain adequate occupancy.   Vacated apartments were subject to being vandalized; a request for police protection resulted in "very limited or no assistance . . . with the result that the [plaintiff's] funds . . . were exhausted and the premises fell in [*sic*] disrepair."   The plaintiff notified the city that its public expression of intention prevented him from retaining tenants and properly maintaining his property.   As a result of the continuing activities of the authority and the loss of rental income, the plaintiff exhausted his funds to repair and maintain the property, to pay taxes and to pay mortgage interest and principal.   "On or about January, 1964" the city ordered the plaintiff to

---

[1] From the Superior Court docket entries delivered to this court pursuant to S.J.C. Rule 1:09, 351 Mass. 736, it appears that the city demurred to the bill as it existed prior to its final amendment. That demurrer, which is not printed in the record, was sustained. A subsequent amendment of the bill, adding the authority and seeking relief against it, made no change in the allegations of the bill against the city but narrowed the relief sought against the city. The city filed no pleading to the bill as finally amended. We treat the final decree dismissing the bill as against the city, following the interlocutory decree sustaining the city's demurrer, as applicable to the bill as finally amended.

repair or demolish the premises. The plaintiff advised
the city that he had no funds to do so and, on or about
June 15, 1964, the city demolished the buildings on the
premises and "charged the . . . [plaintiff]." Thereafter
the city continued to assess taxes, and water and sewer
charges against the razed buildings. In 1964 the city
"acquired the subject property for tax title and pro-
ceeded to foreclose" the plaintiff's rights in the Land
Court. "On or about December, 1966," the authority
began to acquire property in the Charlestown area offer-
ing the plaintiff only the value of the bare land. The
plaintiff alleges further that the sum offered by the
authority was insufficient to cover the liabilities of the
plaintiff, who must pay existing mortgages, outstanding
taxes and demolition assessments. The plaintiff claims
that he has no remedy at law.

Against the city the bill, as finally amended, seeks an
order (1) enjoining the tax taking foreclosure, (2) re-
quiring the city to "absorb the cost of the razing of the
buildings," and (3) abating the taxes on the property
"from the date of the razing of the building [*sic*]."
Against the authority, the plaintiff seeks an order to pay
him "the fair market value of the building [*sic*] located
as of June 15, 1964 . . . [on the plaintiff's premises]
when the buildings were razed," and an order directing
the authority to absorb the cost of the razing of the
buildings on the plaintiff's premises.

Turning first to the plaintiff's allegations and prayers
relating to the city, we note that the parties have agreed
before us that the city has withdrawn its tax foreclosure
proceeding against the premises. We further note that
counsel for the plaintiff in his argument before us waived
any claim against the city in this proceeding for abate-
ment of taxes or for the absorption by the city of the
cost of razing the buildings. We do not, therefore, have
to consider whether there is any possible basis for equit-
able relief concerning tax assessments or concerning the
cost of razing the plaintiff's buildings in the face of the
clear remedies which were available to the plaintiff but

not pursued by him. See G. L. c. 59, especially § 59, as to applications for abatement of taxes. See the provisions of the Boston building code, St. 1938, c. 479, §§ 116–119, as amended, concerning unsafe or dangerous buildings in Boston and the rights of an owner as to an order concerning the demolition of a building alleged to be unsafe or dangerous.

In his allegations against the authority the plaintiff, in most general language, implies that the authority's public announcement of a contemplated redevelopment plan and its delay in implementing any redevelopment plan caused all of the economic woes to which the plaintiff was subjected and that for some reason the authority which, as far as is alleged, was acting in good faith in accordance with law must pay for the cost of demolition of the plaintiff's buildings and compensate him for the value of those buildings on the date of their demolition. There is no allegation of a taking.[2]

The authority demurred on the grounds that (1) the plaintiff had not stated a cause which entitled him to any relief in equity against the authority, (2) the bill did not set forth sufficient facts to warrant relief, (3) the court was without jurisdiction, and (4) the plaintiff had an adequate remedy at law.

It is clear that, when a taking has occurred, the landowner is entitled to file a petition under G. L. c. 79 for the assessment of damages. There is no basis in such circumstances for the filing of a bill asking a court of equity to assess damages. *Lancy* v. *Boston,* 185 Mass. 219, 221. *Preston* v. *Newton,* 213 Mass. 483, 485. *Anglim* v. *Brockton,* 278 Mass. 90, 96. Here, however, on the allegations of the bill, no formal taking by the authority had occurred at the time the bill was filed. Nevertheless there is no basis for equitable relief just because, at the time the

---

[2] We know from argument before us that there had been no formal taking by the authority at the time the bill was filed, but that the authority has since made a formal taking. We also know for the same reason that the plaintiff, relying on this proceeding, has not filed a timely petition for the assessment of damages under G. L. c. 79. See G. L. c. 79, § 16.

bill was filed, there had been no formal taking. If there had been a "taking" of the plaintiff's property other than pursuant to a formal vote of the authority, the plaintiff would still have been entitled to petition for the assessment of damages. See G. L. c. 79, § 10.

The allegations of this bill clearly fail to show a "taking" in any sense. See *Cayon* v. *Chicopee,* 360 Mass. 606, 608–609, 612. A landowner is entitled to damages for the "taking" of his property only when one or more events have occurred which constitute a taking within statutory or constitutional definitions of a taking. *Cayon* v. *Chicopee,* 360 Mass. 606, 608–609. No such events are alleged here. As the *Cayon* case plainly shows, the circumstances surrounding urban renewal and urban redevelopment require advance planning and disclosure, and even public announcements of proposed action which result in decreases in property values are not by themselves compensable takings. *Id.* at 612.

What we have said shows that the final decrees dismissing the bill were proper. Indeed, the plaintiff in argument before us indicated that he was now seeking only to have a hearing on the matter of the assessment of damages. In effect the plaintiff wishes this court to authorize him to convert this equity proceeding into the timely petition for the assessment of damages which he could have brought following the taking by the authority. The plaintiff relies on G. L. c. 79, § 17, as authority for a remanding of this case to be tried as a petition for assessment of damages. The authority asserts that because there is no basis for granting equitable relief, this court has no right to remand the case for trial as a petition for the assessment of damages.

Section 17 of G. L. c. 79, which is set forth in the margin,[3] involves the commencement of a new proceeding

---

[3] General Laws (Ter. Ed.) c. 79, § 17, provides: "If a person petitions for an award or assessment of his damages within the time limited by law, or is a party to such petition by another person, and the petition is quashed, abated or otherwise avoided or defeated for any inaccuracy, irregularity or matter of form, or if, after verdict for such petitioner or other party, the judgment is arrested or re-

designed for the assessment of damages after an earlier petition has been "quashed, abated or otherwise avoided or defeated for any inaccuracy, irregularity or matter of form . . . ." It is not concerned with the amendment of pleadings in any existing proceeding. We need not determine here whether the commencement of a petition for the assessment of damages following the entry of final decrees after rescript in this proceeding would be proper under G. L. c. 79, § 17. See *Jordan* v. *County Commrs. of Bristol*, 268 Mass. 329.

The Superior Court has the power in its discretion, even after rescript, to permit amendments in matters of form or substance and to allow an amendment changing a suit in equity into an action at law so that a plaintiff may sustain the action "for the cause for which it was intended to be brought." G. L. c. 231, §§ 51 and 55. See *Terry* v. *Brightman*, 133 Mass. 536, 537; *Crossman* v. *Griggs*, 188 Mass. 156, 160. Cf. *Adams* v. *Silverman*, 280 Mass. 23, 30. If the denial of the right to amend were deleted from the interlocutory decree sustaining the authority's demurrer, the plaintiff would plainly be entitled to move in the Superior Court after rescript to amend this proceeding into a petition for the assessment of damages. Since 1967 the authority has apparently had notice that the plaintiff may be looking to it for the payment of damages in connection with the effect of the authority's actions upon the plaintiff's premises in Charlestown. Whether, however, the plaintiff who has delayed in pressing his suit, with possible disadvantages to the authority from that delay, should now be allowed to amend this proceeding into a petition for the assessment of damages will be left to the discretion of the Superior Court.

The final decree dismissing the bill as to the city is affirmed. That portion of the interlocutory decree sus-

versed on a writ of error, or the proceedings are quashed on certiorari, such petitioner or other party *may begin such proceedings anew within one year after such abatement, reversal or other determination*" (emphasis supplied).

taining the authority's demurrer which denies the plaintiff leave to amend is deleted and, as so modified, the interlocutory decree is affirmed. Unless within sixty days after the rescript is filed in the Superior Court a motion to amend this proceeding into a petition for the assessment of damages under G. L. c. 79 is filed and allowed in that court, the final decree dismissing the bill as to the authority shall be affirmed.

*So ordered.*