**MARIETTA REALTY, INC., et al.**

v.

**SPRINGFIELD REDEVELOPMENT AUTHORITY, et al.**

**Civ. A. No. 94–30241–MAP.**

United States District Court,
D. Massachusetts.

Oct. 24, 1995.

David A. Lavenburg, Gold & Vanaria, P.C., Springfield, MA, Robert H. Weinstein, Daniel P. Kulakofsky, Charles I. Miller, Daniel H. Cohan, Weinstein and Associates, West Hartford, CT, for plaintiffs.

Maurice M. Cahillane, Jr., Egan, Flanagan & Cohen, P.C., Springfield, MA, for defendants.

*MEMORANDUM REGARDING
DEFENDANTS' MOTION
TO DISMISS*

(Docket No. 28)

PONSOR, District Judge.

## I. *INTRODUCTION*

This case arises out of the defendants' conduct in implementing the South End Urban Renewal Plan in Springfield, Massachusetts. The plaintiffs allege that the identification of their property as within the Plan area and subject to the Springfield Redevelopment Authority's ("SRA") rights of eminent domain deprived plaintiffs of the "reasonable use, utility and enjoyment of the [p]roperty" and that the SRA therefore "took" the property without paying just compensation. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343(a)(2) and (3).

The plaintiffs, Marietta Realty, Inc., K. Louis Melikian and Donna S. Melikian (hereinafter "Marietta") brought this action against the defendant SRA [1] in ten counts, claiming: (1) violation of 42 U.S.C. § 1983 (Count I); (2) violation of 42 U.S.C. § 1985 (Count II); (3) violation of Part I of Article 1 and Article 10 of the Constitution of the Commonwealth of Massachusetts (Count III); (4) constructive taking (Count IV); (5) inverse condemnation (Count V); (6) interference with advantageous relationships (Count VI); (7) fraud (Count VII); (8) negligence (Count VIII); (9) violation of Mass. Gen.L. ch. 93A (Count IX); and (10) breach of contract (Count X). The defendants have moved to dismiss the action for failure to state a claim.[2] Because this court agrees with the defendants with respect to Count I and Count II, these counts will be dismissed for the reasons set forth below. The remaining counts, which proffer purely pendent claims, will also be dismissed on the authority of *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), as a matter of discretion.

## II. *FACTS*

Because this is a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiffs. Furthermore, the complaint cannot "be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiffs can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–47, 78 S.Ct. 99, 101–103, 2 L.Ed.2d 80 (1957) (footnote omitted). The plaintiffs allege the following facts.

The plaintiff Marietta is the owner of a parcel of real property known as 827–845 Main Street, Springfield, Massachusetts (hereinafter "the Property"). (Amended Complaint at ¶ 20) The defendant, SRA, was formed in 1981, and in 1982 it adopted the South End Urban Renewal Plan (hereinafter "the plan"). (*Id.* at ¶ 23) The purpose of the Plan was to negotiate the purchases of properties located within the boundaries of the South End Urban Renewal Project area for renovation, redevelopment and rehabilitation. (*Id.* at ¶ 24) In 1986, SRA amended the Plan to include the Property in question. (*Id.* at ¶ 31) The amended Plan included a map which designated the Property as included in the South End Urban Renewal Project. (*Id.* at ¶ 31) Plaintiffs contend that the recording of the plan along with the map damaged or destroyed the marketability of their property by putting the public on notice that the Property was subject to the SRA's power of eminent domain. (*Id.* at ¶ 33).

In November of 1986 the SRA informed plaintiffs by letter that it intended to acquire the Property. (*Id.* at ¶ 34) On August 12, 1987, SRA approved the inclusion of the Property in the Plan. (*Id.* at ¶ 35) On March 27, 1987, the Springfield Union newspaper reported that the SRA had budgeted $3.4 million to develop the Property and an adjacent parcel. (*Id.* at ¶ 37) On October 2, 1987, SRA approved an additional $1.6 million to renovate the Property and the Winthrop Apartments. (*Id.* at ¶ 38) SRA, by correspondence dated February 26, 1988, again notified Melikian of its intent to acquire the Property. (*Id.* at ¶ 39) The February 26 letter also asked Melikian to cooperate with its appraiser in order to establish a just compensation price for the purchase of the Property. (*Id.* at ¶ 40).

In April of 1988, SRA voted to approve the acquisition of the Property. (*Id.* at ¶ 41) At the same time, SRA denied Marietta and Melikian the right to be named a preferred developer and develop or renovate the Property as an SRA project. (*Id.* at ¶ 45) In fact, SRA refused to acquire the Property

---

1. The parties of record in this action are: the plaintiffs Marietta Realty, Inc., K. Louis Melikian, Donna S. Melikian; the defendants Springfield Redevelopment Authority, Richard C. Brodowski, Philip E. Collins, Jr., Henry M. Downey, Thomas J. Ferris, Maurice J. Granfield, Paul J. Greely, Sophia Jeffrey, Max Leiter, Ronald W. McCarthy, James C. O'Connell, Dominic R. Sarno and Lawrence Wysocki.

2. The defendants have also moved to dismiss based on the statute of limitations. While the defendants' argument is a strong one, it is unnecessary to address it in view of plaintiff's failure to state a claim supporting any federal cause of action.

unless a developer other than Melikian was identified. (*Id.* at ¶ 50) Despite the April 1988 vote, the SRA took no action to purchase the property.

On July 2, 1992, the City of Springfield notified Melikian that he would have to repair or demolish the Property within twenty-four hours or be subjected to daily fines. (*Id.* at ¶ 60) In November of 1992, the Office of Code Enforcement informed Melikian that the City would demolish the Property unless Marietta obtained an injunction within three days. (*Id.* at ¶ 61) Marietta obtained the required injunction. (*Id.* at ¶ 62) However, approximately eight months later, the Springfield Historical Commission voted to demolish the Property due to its state of extreme disrepair. (*Id.* at ¶ 63) In October of 1993, the Property was demolished. (*Id.* at ¶ 64) The SRA never acquired the Property and plaintiffs never received any payment for it. The plaintiffs allege that the SRA's delay caused the value of the Property to diminish substantially. (*Id.* at ¶ 66).

### III. *DISCUSSION*

The question before this court is whether the defendants' conduct amounted to a "taking" in violation of the due process clause of the Fourteenth Amendment and, if so, whether the plaintiffs were required to exhaust the available state remedies before bringing a § 1983 action.

#### A. *The Federal Claims*

■ The plaintiffs bring two claims under federal law, one under 42 U.S.C. § 1985 and the other under 42 U.S.C. § 1983. The parties agree that the § 1985 claim must be dismissed because the plaintiffs do not allege any class based discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 101–02, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The remaining claim under § 1983 must also be dismissed, defendants say, for several reasons.

First, the defendants argue, in reliance on two Massachusetts Supreme Judicial Court opinions, that their conduct does not amount to a "taking." The defendant is accused of publicly announcing its intention to acquire the plaintiffs' property, adopting a plan which included the Property and then failing to execute the acquisition of the plaintiffs' Property.

The Supreme Judicial Court of Massachusetts held in *Cayon v. City of Chicopee*, 360 Mass. 606, 277 N.E.2d 116 (1971), that:

> [T]he respondents' action in announcing that the petitioner's land would be taken for urban renewal purposes and in failing to execute the takings, thereby decreasing the value of his property and depriving him of the opportunity to use or sell the land or pay taxes levied upon it, do not disclose a "taking" for which compensation must be paid.

*Id.* at 608, 277 N.E.2d 116.

Similarly, the SJC stated in *Fram v. Boston*, 363 Mass. 68, (1973):

> [T]he circumstances surrounding urban renewal and urban redevelopment require advance planning and disclosure, and even public announcements of proposed actions which result in decreases in property values are not by themselves compensable takings.

Despite this apparently contrary authority, the plaintiffs insist that the SRA's conduct is equivalent to a "taking." Marietta finds support for its position in *Archer Gardens, Ltd. v. Brooklyn Center Development Corporation*, 468 F.Supp. 609 (S.D.N.Y.1979). The property owners in the *Archer Gardens* case claimed a violation of civil rights under § 1983, arising out of an alleged abuse of condemnation powers and conspiracy. The court held that the city's conduct was sufficient to constitute a constitutional "taking" for which the plaintiffs were entitled to compensation.

*Archer Gardens* does not help plaintiffs for two reasons. First, the complaint in the *Archer Gardens* case alleges a fact that is absent from the instant case. In addition to manifesting an intent to purchase the plaintiffs' property, the defendant in *Archer Gardens* contracted with the plaintiffs to purchase the properties and began "tax foreclosure proceedings pursuant to a scheme whereby [the defendants would] be able to 'purchase the plaintiffs' properties . . . at well

below the agreed-upon price.' " *Archer Gardens,* at 612. In this case the parties never entered a contractual relationship. The case is thus distinguishable.

Second, *Archer Gardens* is an old case from New York. It has no force in the face of the *Fram* and *Cayon* cases. The law in this jurisdiction is clear. The defendant's public announcement of its intent to acquire the plaintiffs' property, and its failure to do so, do not constitute a "taking" of the plaintiffs' property.

Finally, the defendants argue that even if a "taking" did occur, the plaintiffs failed to meet the prerequisites for a § 1983 claim. The defendants contend that in a "taking" case the plaintiff is required to exhaust state law remedies where available.

 While it is true, in general, that exhaustion of state remedies is not a prerequisite to bringing a § 1983 claim, *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), in a "taking" case such as this one the Supreme Court has held that a plaintiff cannot claim a lack of just compensation without first invoking the mechanisms available to compensate him.

In *Williamson Co. Regional Planning Commission v. Hamilton,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Court held that a property owner's claim was premature because the state provided for an inverse condemnation action to obtain just compensation for private property that had been allegedly taken. In *Williamson,* the plaintiff, an owner of a tract of land, sued the Planning Commission, claiming that the regulation of his property was so onerous that it amounted to a "taking." The Court wrote:

> ... [B]ecause the Fifth Amendment proscribes a *taking without just compensation* no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action.

*Williamson,* 473 U.S. at 194, n. 13, 105 S.Ct. at 3120, n. 13. (emphasis in original).

Mass.Gen.L. ch. 79 provides a means by which a plaintiff may seek redress for an alleged deprivation of property. Since plaintiffs failed to invoke this law, *Williamson* bars their claim. *Archer Gardens,* which was decided before *Williamson,* offers no shield from the Supreme Court's holding.

*Williamson* is fatal to the plaintiffs' claim whether based on the Fourteenth or Fifth Amendment.

> In sum, respondent's claim is premature, whether it is analyzed as a deprivation of private property without due process under the Fourteenth Amendment, or as a taking under the Just Compensation Clause of the Fifth Amendment.

*Id.,* at 200, 105 S.Ct. at 3123–24.

Where a claimant seeks a post-deprivation remedy and the laws of that state provide an adequate one, the plaintiff cannot bring a § 1983 action without first exhausting the laws of the state. Massachusetts offers a remedy and that remedy has been found to be adequate. See *Gilbert v. City of Cambridge,* 932 F.2d 51, 64–65 (1st Cir.1991), *cert. denied,* 502 U.S. 866, 112 S.Ct. 192, 116 L.Ed.2d 153 (1992).

### B. *The State Claims*

 The dismissal of the federal claims permits a dismissal of the pendant state law claims as a matter of discretion. *United Mine Workers v. Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. The plaintiffs contend that the state law claims cannot be dismissed because this case was brought under 28 U.S.C. § 1391(b), which plaintiffs argue, provides diversity jurisdiction. The argument suffers from two infirmities. First, plaintiffs cite only 28 U.S.C. § 1391(b), which relates to venue rather than jurisdiction, in support of their claim for diversity jurisdiction. Amended Complaint at 3. Second, in any event, a careful review of the Amended Complaint discloses an absence of complete diversity. The plaintiff Marietta is described as a Massachusetts corporation, with its principal place of business in Marietta, Georgia. Amended Complaint at 4. In general, a corporation is a citizen of its state of incorporation as well as its principal place of business. 28 U.S.C. § 1332(c). Because both the plaintiff and the defendants are citizens of the Commonwealth of Massachusetts, jur-

isdiction based on diversity cannot be asserted.

## IV. CONCLUSION

For the reasons set forth above, the defendants' Motion to Dismiss the Amended Complaint for Failure to State a Claim is hereby ALLOWED. The dismissal of the state law claims is without prejudice to re-filing in state court.