CHELSEA YACHT CLUB *vs.* MYSTIC RIVER BRIDGE AUTHORITY.

Suffolk.   November 2, 1953. — December 3, 1953.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Chelsea Yacht Club.   Mystic River Bridge Authority.   Easement.   Way, Private:* creation, extent.   *License.   Bridge.   Adverse Possession and Prescription.   Eminent Domain,* Right to damages.

A mere license to erect a building conveys no estate in land and creates no easement of access to the building by implication.   [568]

A private right of way cannot be acquired by adverse use in travelling over a public way.   [568]

A right of way by implication over a bridge would not continue longer than the existence of the bridge.   [568]

Removal of the Chelsea North Bridge over the Mystic River by the Mystic River Bridge Authority pursuant to St. 1946, c. 562, § 14, whereby a club house of the Chelsea Yacht Club erected on piles in the river at one side of the bridge and theretofore reached over the bridge was left undamaged physically but entirely surrounded by water and about two hundred feet from land, did not make the club a "person damaged in his property" within § 14 and entitled to recover damages from the authority where it appeared that the club house had been erected many years before pursuant to St. 1890, c. 311, and under a license from the board of harbor and land commissioners, neither of which referred to any right of way, and it did not appear who owned the bridge or that the club had any right of way over it.   [568]

PETITION, filed in the Superior Court on July 16, 1951.

A demurrer was sustained by *Donahue,* J.

*George L. O'Hara,* for the petitioner.

*John V. Phelan,* (*Frank Ramacorti* with him,) for the respondent.

WILKINS, J.   The petitioner owns a building, used as

its club house, which rests upon piles driven into the bed of Mystic River in tide water upon land owned by the Commonwealth. The building was erected over sixty years ago pursuant to St. 1890, c. 311,[1] and under a license (see *Commissioner of Public Works* v. *Cities Service Oil Co.* 308 Mass. 349, 353–354) from the board of harbor and land commissioners which was recorded in the Suffolk registry of deeds. The club house was located on the easterly side of Chelsea North Bridge with access over the bridge. The respondent is a body corporate and politic created by St. 1946, c. 562, as amended by St. 1947, c. 626, to construct, maintain, and operate Mystic River Bridge. Pursuant to St. 1946, c. 562, § 14,[2] the respondent, upon completion of Mystic River Bridge, removed Chelsea North Bridge, leaving the petitioner's club house surrounded by water about two hundred feet from land. This petition is for damages to the building occasioned by loss of access over the bridge. G. L. (Ter. Ed.) c. 79. A demurrer to the amended petition was sustained, and the case is here upon a report of the correctness of that ruling. *Flint* v. *Wilmington,* 310 Mass. 66.

There has been no physical injury to the club house itself. The structure is intact. The alleged damage is the isolation

[1] Statute 1890, c. 311, in its entirety is as follows: "Section 1. The Chelsea Yacht Club is hereby authorized, subject to the provisions of chapter nineteen of the Public Statutes, to drive not exceeding fifty piles, and to build thereon a club house, with a raft or float, on the easterly side of Chelsea bridge in Mystic river, about one hundred feet northerly from the northerly draw in said bridge. The location of the piles and the manner of building said structure shall be subject to the direction and approval of the board of harbor and land commissioners. The structure hereby authorized shall be occupied and used only for the lawful purposes of said yacht club, and may be removed by said board or by its direction whenever such use ceases or if used for any other purpose. Section 2. Said structure shall not be built until authorized by the board of aldermen of the city of Chelsea and shall be removed when ordered by them. Section 3. This act shall take effect upon its passage."

[2] Section 14, in so far as material, reads: "When the bridge shall have been completed and opened for traffic, the authority shall immediately close and remove the bridge over the main channel of the Mystic river and now or formerly known as the Chelsea North bridge, together with so much of the approaches as are no longer needed for highway purposes, and the cost of such removal shall be deemed to be a part of the cost of the project authorized by this act. Any public ways so closed shall be deemed to be discontinued and shall thereupon cease to be public ways without further action by the municipality or other public body under whose jurisdiction they existed as ways. . . . Any person damaged in his property by the exercise of any of the powers granted by this act may recover his damages from the authority under chapter seventy-nine of the General Laws. . . ."

occasioned by removal of the only approach from land. There is no reference to a right of way in St. 1890, c. 311, or in the license granted by the board of harbor and land commissioners. It does not appear who owned Chelsea North Bridge, or that the board could have granted an easement over it. There is no basis for the implication of an easement in the presumed intention of the parties. See *Dale* v. *Bedal,* 305 Mass. 102, 103; *Joyce* v. *Devaney,* 322 Mass. 544, 459; *Hurley* v. *Guzzi,* 328 Mass. 293, 296. And an easement by implication can arise only in connection with an estate conveyed. *Union National Bank* v. *Nesmith,* 238 Mass. 247, 248. *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 284 Mass. 100, 106. By its license the petitioner acquired no interest in land. *Baseball Publishing Co.* v. *Bruton,* 302 Mass. 54, 55. *Woodbury* v. *Municipal Council of Gloucester,* 318 Mass. 385, 388. *Chase* v. *Aetna Rubber Co.* 321 Mass. 721, 724. Nor could a private right of way be acquired by adverse use in travelling over the bridge while it was a public highway. *Thomas* v. *Marshfield,* 13 Pick. 240, 249. *Providence, Fall River & Newport Steamboat Co.* v. *Fall River,* 187 Mass. 45, 48. *Bigelow Carpet Co.* v. *Wiggin,* 209 Mass. 542, 550. In any event, an easement over the bridge would not exceed the life of that structure. *Union National Bank* v. *Nesmith,* 238 Mass. 247, 249. *Hurley* v. *Guzzi,* 328 Mass. 293, 297. *Sorel* v. *Boisjolie, ante,* 513. The case does not fall within the authorization to sue conferred upon a "person damaged in his property" by St. 1946, c. 562, § 14.

The plan accompanying the license by the board of harbor and land commissioners is not in the record, and cannot be considered. A copy in the respondent's brief shows that the plan would not have made the petition good against demurrer. There is no validity in the argument that the respondent exceeded its powers conferred by St. 1946, c. 562, § 14. We have stated all of the petitioner's contentions which merit discussion.

*Order sustaining demurrer affirmed.*