PETER CANN & another *vs.* COMMONWEALTH.

Middlesex.     May 1, 1967. — June 30, 1967.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Eminent Domain,* Limitation of time for assessment of damages proceeding, What constitutes taking, Limited access way. *Limitations, Statute of. Way,* Public: limited access way. *Notice. Words,* "Actual notice."

There was a taking of an interest in a parcel of land abutting a highway by an order adopted and recorded in behalf of the Commonwealth in 1961 reestablishing the highway location and affecting the parcel, which

had been used for both business and residential purposes, only by limiting access to and egress from the highway to the residential purposes of the parcel; and where, within G. L. c. 79, § 16, the owners of the parcel never received notice under § 8 "or otherwise of the proceedings whereby . . . [they were] entitled to damages," but did eventually receive "actual notice of the taking" of such interest, they had six months after receipt of the "actual notice" in which to commence a proceeding for assessment of their damages and were barred under § 16 from maintaining a proceeding begun after the expiration of such six months.   [73–75]

The owners of a parcel of land abutting a highway and previously used for both business and residential purposes received, within G. L. c. 79, § 16, "actual notice of" a taking of an interest in the parcel by an order adopted and recorded in behalf of the Commonwealth in 1961 reëstablishing the highway location and limiting access to and egress from it to the residential purposes of the parcel, where, following inquiries by the landowners, they received from their congressman a letter addressed to the congressman from an official of the Massachusetts Department of Public Works stating that there had been "an access taking from" the parcel and that "access . . . was limited to residential purposes."   [75–77]

PETITION filed in the Superior Court on May 20, 1964.

The case was tried before Brogna, J.

Charles G. Kadison, Jr., for the petitioners.

Robert L. Meade, Assistant Attorney General, for the respondent.

SPIEGEL, J.   This is a petition for assessment of damages under G. L. c. 79, filed on May 20, 1964.   At the trial before a jury the Commonwealth moved to dismiss the proceeding "for the reason that it was not commenced within the time allowed by law" and also moved for a directed verdict. Both motions were denied.   The jury's verdict in favor of the petitioners was entered under leave reserved.

The judge subsequently made "findings and rulings re . . . [the Commonwealth's] motions for directed verdict and motion to dismiss."

The Commonwealth moved for entry of a verdict under leave reserved and the petitioners moved for a new trial "for the reason that the amount of the verdict is inadequate and against the law and the evidence."   These motions were denied.   The case is here on the petitioners' and Commonwealth's bills of exceptions.

The only exceptions argued relate to the judge's rulings regarding the timeliness of the filing of the petition. The following facts relating to that issue appear from the record before us. On October 3, 1961, the Commonwealth recorded an order of taking which established "a new State highway location, with limited access provisions, for a portion of the proposed Route 495. . . . The layout also reestablishes with limited access provisions the location lines of a portion of . . . Route 111. . . . Access to and egress from said location is allowed abutters for residential purposes only at Route 111." Route 111 was relocated "approximately 60 feet from . . . [the petitioners'] property and . . . [elevated 13 to 19 feet]. None of . . . [the petitioners'] physical property was taken, but the plan indicated that due to an off-ramp construction opposite the reconstructed property entrance, access was restricted for reasons of safety." The petitioners were conducting a business on their property as well as using it for a residence. Other relevant facts will be mentioned below.

1. General Laws c. 79, § 16, provides in material part, "A petition for the assessment of damages under section fourteen may be filed within two years after the right to such damages has vested; but any person, including every mortgagee of record, whose property has been taken or injured, and who has not received notice under section eight or otherwise of the proceedings whereby he is entitled to damages at least sixty days before the expiration of such two years, may file such petition within six months after the taking possession of his property or the receipt by him of actual notice of the taking, whichever first occurs, or, if his property has not been taken, within six months after he first suffers actual injury in his property."

It is agreed that the petitioners never received "notice under section eight or otherwise of the proceedings whereby . . . [they were] entitled to damages." This section distinguishes two situations for the purpose of setting the time within which a petition must be brought where, as here, no such notice is received. If a person's "property has not

been taken'' then the petition must be brought ''within six months after he first suffers actual injury in his property.'' All other persons ''whose property has been taken or injured . . . may file such petition within six months after the taking possession of his property or the receipt by him of actual notice of the taking, whichever first occurs.''

The Commonwealth argues that the judge erred in ruling that ''none of the petitioners' property . . . [had been] taken.'' It is this ruling which led the judge to hold that the petitioners had six months after they first suffered actual injury to their property to file a petition for damages.

A distinction between a ''taking'' of property and other ''injury'' to property has been developed in recognition of the fact that the Constitution compels compensation only if ''the property of any individual should be appropriated to public uses.'' Art. 10, Declaration of Rights. *Connor* v. *Metropolitan Dist. Water Supply Commn.* 314 Mass. 33, 36–37. The Legislature, in enacting such statutes as G. L. c. 79 and c. 81,[1] provided compensation for injuries to property which would not amount to a taking under the Constitution as well as providing compensation for takings. See *Nichols* v. *Commonwealth,* 331 Mass. 581. The language of those statutes reflects the distinction between takings, for which compensation is compelled, and other injuries which are compensated only as a matter of legislative grace.

In *Grove Hall Sav. Bank* v. *Dedham,* 284 Mass. 92, 93, we held that the setting of a building line ''constitutes an encumbrance upon land in the nature of an equitable easement for the benefit of the public; it is a taking of private property by eminent domain for public use and the procedure prescribed for such taking must be followed. *Watertown* v. *Dana,* 255 Mass. 67, 70.'' In the instant case the Commonwealth ''under a layout and an order of taking . . . changed the access [to a public way] from unlimited access to that restricted to residential purpose only.'' We are of

---

[1] General Laws c. 81, § 7C, provides for the recovery of damages under G. L. c. 79 ''for the taking of or injury to . . . easements of access to . . . [a] public way'' where ''a limited access way is laid out in whole or in part in the location of an existing public way.''

opinion that there is no significant difference between the setting of a building line and the restriction of access to a public way for the purpose of determining whether such action amounts to a "taking." Here, as in the *Grove Hall* case, an equitable easement in favor of the public has been taken, even though land was not taken in fee.

We are strengthened in our conclusion that there was a taking rather than some other compensable "injury" within the meaning of G. L. c. 79, § 16, by the manifest purpose served by that section in distinguishing a "taking" from an "injury." If no formal taking had occurred the earliest time at which the petitioners would have become aware of the Commonwealth's action would have been when some actual injury was done to their land. It would be difficult to give them actual notice of an injury if no formal proceedings had been instituted. Likewise no "possession" by the Commonwealth would be likely if the Commonwealth's action did not amount to a taking. But here, where formal taking proceedings were instituted, the petitioners were treated fairly if they received actual notice of the taking.

2. The petitioners wrote letters to persons in authority in the State and Federal government, inquiring about the status of their access rights. They received a letter from their congressman dated July 18, 1963, which enclosed a letter from the Massachusetts Commissioner of Public Works addressed to the congressman. The judge ruled this letter "was actual notice to the petitioners within the purview of G. L. c. 79, § 16," and the petitioners took an exception.[2]

The petitioners argue that the statutory phrase "actual notice" should be strictly construed, where, as here, a statutory form of notice. is provided. See G. L. c. 79, § 8.[3]

---

[2] The judge excluded certain "evidence of the Commissioner's usual procedure in notifying the property owner of a taking of land" on the ground that this letter was actual notice and the petitioners excepted.

[3] Section 8. "Immediately after the right to damages becomes vested, the board of officers who have made a taking under this chapter shall give notice thereof to every person, including every mortgagee of record, whose property has been taken or who is otherwise entitled to damages on account of such taking, and to the collector of taxes of the city or town in which the land

"The petitioners assert . . . that no method of notice was used by the Commonwealth, directly or indirectly, to advise the petitioners of (1) the amount of damages, if any, awarded for such taking or, if no damages had been awarded, (2) the time within which they may petition for the same, (3) the time within which they may request an offer under section 8A, and (4) the time within which they may petition the Superior Court to determine their damages under section 14, all as prescribed by G. L. c. 79, § 8.''

Our reading of § 16 does not lead us to the conclusion urged by the petitioners. The first part of § 16 states that if a person received "notice under section eight or otherwise of the proceedings whereby he is entitled to damages" within the specified time he is required to bring his petition within the two year period. The second part of § 16 permits a person to bring a petition within six months of "the receipt by him of actual *notice of the taking*" (emphasis added). If the Legislature had intended to require that the petitioners receive actual notice of the proceedings whereby they were entitled to damages rather than notice of the taking it would have been simple to repeat that phrase in the second part of the section.

We are of opinion that the judge was correct in ruling that the "letter was actual notice to the petitioners within the purview of . . . [G. L. c. 79, § 16]." The attached letter from the Commissioner of Public Works to the con-

taken is located. Such notice shall be in writing and shall describe in general terms the purpose and extent of the taking, and shall state the amount of damages, if any, awarded for such taking, or, if no damages have been awarded, the time within which he may petition for an award of the same, and in either case the time within which he may request an offer under section eight A and the time within which he may petition the superior court to determine his damages under section fourteen. If, within two years after the date of an order of taking for a highway or town way or for a ditch or drain for draining the same, entry is made or possession taken thereunder for the purpose of constructing the same, such notice of taking shall also state the date of such entry or taking possession. Such notice may be served by personal service, or by leaving an attested copy thereof at the last and usual place of abode of the person to be notified if he is a resident of the commonwealth, by any person authorized to serve civil process, or notice may be given to persons within or without the commonwealth, by registered mail or other suitable means. Failure to give notice shall not affect the validity of the proceedings, or the time within which a petition for damages may be filed, except as provided by section sixteen.''.

gressman stated: "There was an access taking from Mr. Cann's property. . . . [A]ccess . . . was limited to residential purposes as a traffic safety precaution." As the petitioners concede in their brief, "[o]ral notice by a person in authority . . . might under certain circumstances satisfy the requirement. *Curtis* v. *Mundy,* 3 Met. 405, 408." It is of no consequence that the letter from the commissioner was directed to the congressman and not to the petitioners. Contrary to the petitioners' assertion this communication was more than "inquiry notice." Compare *Tramontozzi* v. *D'Amicis,* 344 Mass. 514, 517, relied on by the petitioners.

Since no "possession" of the petitioners' property was possible under this taking, *Grove Hall Sav. Bank* v. *Dedham,* 284 Mass. 92, 95, the petitioners could not come within the provision of § 16 permitting a petition to be brought within "six months after the taking possession of his property" where his property has been taken.

> *Petitioners' exceptions overruled.*
> *Respondent's exceptions sustained.*