## PAUL'S LOBSTER, INC. *vs.* COMMONWEALTH & another.[1]

No. 98-P-1092.

Suffolk. December 15, 1999. - November 16, 2001.

Present: BECK, DREBEN, & RAPOZA, JJ.

*Constitutional Law,* Eminent domain, Police power, Taking of property. *Eminent Domain,* What constitutes taking. *Way,* Public: access.

In a civil action, the plaintiff failed as a matter of law in its contention that the reconfiguration of a public way, which reconfiguration prevented large trucks from gaining access to the plaintiff's loading docks in the way they had prior to the reconfiguration, constituted a constructive taking of the plaintiff's property, where the plaintiff still had direct access to the public way but could no longer make its accustomed use of the expansive layout of a public thoroughfare. [230-233]

On a motion for summary judgment in a civil action, the plaintiff failed to demonstrate that the damage to its property caused by the reconfiguration of a public way, which reconfiguration prevented large trucks from gaining access to the plaintiff's loading docks in the way they had previously, was "special and peculiar" within the meaning of G. L. c. 79, § 12, where the plaintiff did not lose access to the road, but only its accustomed use of the unimproved road, and other businesses on that road had to contend with the same changes in the road. [233-236]

CIVIL ACTION commenced in the Superior Court Department on March 7, 1996.

The case was heard by *Allan van Gestel,* J., on motions for summary judgment.

*Meaghan E. Barrett* for the plaintiff.

*Stephen Dick,* Assistant Attorney General, for the Commonwealth.

*Laura Caltenco* for the city of Boston.

BECK, J. In this appeal, we consider the plaintiff's claims that government action caused damage to its real property for which it is entitled to be compensated. The plaintiff, Paul's Lobster,

[1]City of Boston.

Inc., asserts that the reconfiguration of Northern Avenue in Boston prevented large trucks from approaching its loading docks and therefore constituted a constructive taking of its property. The defendants are the Commonwealth of Massachusetts and the city of Boston. On cross motions for summary judgment, a Superior Court judge ruled that the plaintiff was not entitled to relief because the government action at issue was an exercise of police power, not a constructive taking. For the reasons set out below, we affirm.

*Facts.* Although the parties filed cross motions for summary judgment, the briefs and the record reveal some dispute about the facts. However, neither party suggests that these disagreements concern material facts and warrant a trial. We therefore accept the plaintiff's view of the evidence, while noting certain opposing assertions, and consider whether on that state of the evidence, the judge erred in allowing the defendants' motion for summary judgment. See generally *Bergendahl* v. *Massachusetts Elec. Co.*, 45 Mass. App. Ct. 715, 718 (1998), cert. denied, 528 U.S. 929 (1999).

For more than sixty years the plaintiff bought and sold lobsters at 150 Northern Avenue in Boston, property it has owned for many years. It received shipments from suppliers in Maine and Canada, as well as from local fishermen, and either transferred the lobsters to a customer's truck or loaded its own trucks and delivered the lobsters to its customers. Most of the lobsters arrived at the plaintiff's facility in trucks of various sizes, from relatively small, six-wheel, fourteen- to twenty-foot trucks for local deliveries, to large, eighteen-wheel, sixty- to seventy-five-foot tractor trailer trucks for long distance transport. Some lobsters were received at Northern Avenue directly from lobster boats, on the harbor side of the plaintiff's property.

Prior to its redesign in 1992, Northern Avenue, which the parties agree is a public way owned by the city of Boston, was wide and unimproved. (The plaintiff estimated the width "from the end of [its] loading dock to the nearest building across Northen Avenue" at 135 feet.) The plaintiff's building extended across the frontage of its property; its loading docks directly abutted Northern Avenue. The business took advantage of this layout. Trucks delivering lobsters approached the plaintiff's two

loading docks by backing in from Northern Avenue, with the trucks perpendicular to the road and the plaintiff's building; the loading docks could accommodate up to four or five trucks at a time if necessary. Loading or unloading a large truck could take several hours. During the unloading process, a substantial part of the length of the larger trucks was parked on Northern Avenue, perpendicular to traffic flow. No one objected, presumably because of the wide, unimproved nature of the road and the limited development of the area.

As a result of the reconstruction, which was under the direction of the Massachusetts Highway Department, the traveled portion of the road is narrower than before and no longer directly abuts the plaintiff's property. A small parking area and sidewalks now occupy the space between the road and the plaintiff's building; a median strip now divides Northern Avenue opposite the property. (There is nothing in the record before us as to the reason for the redesign, other than a mention in the plaintiff's brief of the Central Artery project.)

The redesign (primarily the layout of the road reducing its width, and construction of the median) substantially interfered with the plaintiff's long-standing practice of stationing large trailer trucks at its loading docks. Although the copies of the photographs in the record appendix are so poorly reproduced as to be virtually useless, a videotape of a trailer truck attempting to back up to a loading dock, relied on in an affidavit of the plaintiff's president, was supplied to us without objection from the defendants. We have watched the tape. It shows that a perpendicular approach to the docks requires extensive maneuvering, with the truck blocking traffic throughout the effort. Once parked at the dock, a sixty-foot truck blocked both lanes of Boston-bound traffic, forcing those vehicles to drive on the wrong side of the median, and requiring pedestrians to walk out into the road to proceed around the parked truck. (The Commonwealth disputes the lessons of the video tape and argues that in the end the truck only blocked one lane of traffic, not two.)

Initially the city issued the plaintiff a temporary permit for a "parallel loading dock," which apparently was "sidelong" to the building docks but extended onto city property. The plaintiff

continued to use this dock without incident until it moved in April, 1995, although the permit had by then expired. In fact, the plaintiff's sales increased substantially in 1994, after the reconstruction at issue here. The plaintiff asserts by affidavit of its president, without other evidence or objection from the defendants, that the city refused to renew the permit.

The plaintiff moved to 339 Northern Avenue on April 1, 1995. It filed the current action in the Superior Court in March, 1996, claiming that the redesign forced the move. Nine months later it filed for Chapter 11 bankruptcy. See 11 U.S.C. §§ 101 et seq. The bankruptcy court remanded the case to the Superior Court. In a second round of cross motions for summary judgment, a Superior Court judge allowed the defendants' motions on the ground that the changes in Northern Avenue constituted "the exercise of the police power, not a constructive taking."

*Discussion.* The plaintiff's complaint sought damages from the city and the Commonwealth in four counts, two of which it argues on appeal: (1) a "constructive taking"; and (2) a "state highway" claim pursuant to G. L. c. 81, §§ 7, 7A. The defendants argue in support of the judge's decision rejecting the plaintiff's claims. In considering the parties' arguments, we are mindful that although the difference between the government's exercise of its eminent domain power and the exercise of police power may be "manifest in principle, . . . the facts and circumstances of different cases are so various, that it is often difficult to decide whether a particular exercise [of government authority] is properly attributable to the one or the other." *Commonwealth* v. *Alger*, 7 Cush. 53, 86 (1853) (Shaw, C.J.). See *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. 104, 124 (1978) ("this Court . . . has been unable to develop any 'set formula' for determining when 'justice and fairness' require that economic injuries caused by public action be compensated by the government" [citation omitted]).

*Constructive taking or police power.* "The essential distinction between an exercise of the State's eminent domain power which is compensable [under the Federal and State constitutions] and an exercise of the police power which is not is that in the exercise of eminent domain a property interest is taken from the owner and applied to the public use because such use is

beneficial to the public, while in the exercise of the police power an owner's property interest is restricted or infringed upon to prevent its use in a manner detrimental to the public interest." *Davidson* v. *Commonwealth*, 8 Mass. App. Ct. 541, 548 (1979). See *Turnpike Realty Co.* v. *Dedham*, 362 Mass. 221, 235 (1972), cert. denied, 409 U.S. 1108 (1973). "[A] taking of private property for which compensation must be paid is not necessarily restricted to an actual physical taking of the property." *Cayon* v. *Chicopee*, 360 Mass. 606, 609 (1971). See *Municipal Light Co. of Ashburnham* v. *Commonwealth*, 34 Mass. App. Ct. 162, 169, cert. denied, 510 U.S. 866 (1993). "[G]overnmental action amounting to a substantial interference with the basic rights incident to the ownership of private property constitutes, in effect, a constructive taking." *Cayon* v. *Chicopee*, *supra* at 609-610, and cases cited. See *United States* v. *General Motors Corp.*, 323 U.S. 373, 378 (1945). Access to a public way is an incident of ownership of land bordering on that public way. *Anzalone* v. *Metropolitan Dist. Commn.*, 257 Mass. 32, 36 (1926).

The plaintiff argues that there was a constructive taking of its property because "the redesign and reconstruction of Northern Avenue made [the plaintiff's] necessary access to its loading dock impossible." "To determine whether particular governmental actions have effected a taking, we must focus 'on the character of the action and on the nature and extent of the interference with' the plaintiff's property rights." *Davidson* v. *Commonwealth*, *supra* at 548, quoting from *Penn Cent. Transp. Co.* v. *New York City*, *supra* at 130. See *Grace* v. *Brookline*, 379 Mass. 43, 56 (1979). "Whether there is a reasonable interference with a landowner's rights undertaken in the exercise of the police power for the public benefit or a deprivation of private property without compensation often depends upon the facts of the particular case." *Commissioner of Natural Resources* v. *S. Volpe & Co.*, 349 Mass. 104, 108 (1965). See *Davidson* v. *Commonwealth*, *supra* at 550.

As presented in the summary judgment materials before the judge, the facts of this case do not support the plaintiff's claim of a constructive taking. Instead, the facts reveal that the public made no use of the plaintiff's property for its own purposes.

Rather, the plaintiff could no longer make its accustomed use of the expansive layout of a public thoroughfare. The plaintiff did not acquire the right to an adverse use of Northern Avenue by parking trailer trucks there for hours at a time over many years. See *Chelsea Yacht Club* v. *Mystic River Bridge Authy.*, 330 Mass. 566, 568 (1953). "[W]hile [the plaintiff has] a legal right of access to the general system of public streets, [it did] not acquire[] a right to have this particular [road] remain in its original configuration." *Miczek* v. *Commonwealth*, 32 Mass. App. Ct. 105, 109 (1992). Contrast *Cann* v. *Commonwealth*, 353 Mass. 71, 74-75 (1967). In that case, Cann owned property abutting a public road on which he conducted a business. The Commonwealth "under a layout and an order of taking . . . changed the access [to a public way] from unlimited access to that restricted to residential purpose only," *id.* at 74, thus entirely eliminating Cann's customers' access to his business. Such an action, the court held, constituted a constructive taking.

Here the plaintiff still had direct access to Northern Avenue. Smaller trucks and lobster vessels could continue to deliver lobsters as they had before the developments at issue here. Access was curtailed for the large trailer trucks because they could no longer park directly on Northern Avenue. But the plaintiff had no enforceable right to park there. Cf. *Flynn* v. *Cambridge*, 383 Mass. 152, 160 (1981) ("the government is not required to compensate [a land owner] for denying [it] the right to use that which [it] has never owned"). Unfortunately for the plaintiff, "[t]he State's action . . . simply exposed the functional unsuitability of plaintiff's land and structure, as . . . constituted, to accommodate reception of freight carriers of the size necessary to deliver [some of] the particular merchandise plaintiff handles." *Tubular Serv. Corp.* v. *Commissioner of State Hy. Dept.*, 77 N.J. Super. 556, 564-565, aff'd, 40 N.J. 331 (1963).

"[T]he police power . . . grant[s] to the [S]tate the right to make reasonable rules and regulations governing the use of public roadways and the power to construct and/or place medians, divisor strips, painted lines and similar traffic control devices. In this area, the interests of the abutting landowner are viewed as subordinate to the interests of the public at large." 2A Nichols, Eminent Domain § 6.10[3][a], at 6-167 to 6-168

(rev. 3d ed. 2001). Compare *Harte* v. *Dartmouth*, 45 Mass. App. Ct. 779, 780-781 (1998) (installation of median barrier requiring two-mile detour to reach plaintiff's car dealership and diminishing opportunity to see plaintiff's business from the road not impairment of access). Even were we to infer that the plaintiff is challenging the specific design and layout of the road rather than the general regulation of traffic, aesthetics would justify the exercise of police power in these circumstances. Cf. *John Donnelly & Sons, Inc.* v. *Outdoor Advertising Bd.*, 369 Mass. 206, 218 (1975). We therefore conclude that the plaintiff did not demonstrate a constructive taking of its property. Rather, the defendants engaged in the reasonable exercise of their police power. Cf. *Grace* v. *Brookline*, 379 Mass. at 56 (police power pressed too far may amount to a taking). We now consider whether the plaintiff was nevertheless entitled to damages for statutory injury to its property.

*Statutory injury: special and peculiar damages.* An owner of property in the Commonwealth whose property has not been taken may nevertheless recover for injury to its property if there is statutory authorization for such a claim and the owner can demonstrate that the damages to its property are "special and peculiar." G. L. c. 79, § 12. Here, the plaintiff claims that it sustained injury pursuant to G. L. c. 81, §§ 7, 7A. Section 7A provides in part that

> "[i]n connection with the laying out, alteration or reconstruction of a state highway, the department [of highways] may alter or relocate connecting ways as may be necessary. Land or rights in land may be acquired for this purpose by eminent domain . . . . Any person whose property has been taken or injured by any action of said department under authority of this section may recover from the commonwealth under chapter [79] such damages therefor as he may be entitled to."

G. L. c. 81, § 7A, as appearing in St. 1948, c. 448. Section 7 contains similar language regarding State highways. (There appears to be no dispute that the Massachusetts Highway Department controlled the Northern Avenue project or that Northern Avenue qualifies as a State highway, see G. L. c. 81, §§ 4, 5, 13, or connecting way.) General Laws c. 79, § 12, sets out the

measure of damages for various government actions. After stating the method of figuring damages for property taken in whole or in part, the statute provides that "[i]n determining the measure of damages to a parcel of land injured when no part of it has been taken, regard shall be had only to such injury as is special and peculiar to such parcel." G. L. c. 79, § 12. "Special and peculiar" injuries are "unique injuries that differ from those 'of the general public.' " *Burlington* v. *Bedford*, 417 Mass. 161, 166 (1994), quoting from *Tassinari* v. *Massachusetts Turnpike Authy.*, 347 Mass. 222, 225 (1964). That the damage complained of "may be greater in degree" is not sufficient; it must "differ in kind from that of . . . other members of the community." *Smith* v. *Boston*, 7 Cush. 254, 255-256 (1851). The damages also "must be the direct and immediate consequence of the act complained of, and [not] remote [or] contingent." *Id.* at 255.

"[T]he problem in each case [of alleged statutory injury from denial of access] consists of assessing a variety of factors." *Malone* v. *Commonwealth*, 378 Mass. 74, 80 (1979). These factors include "the existence, availability, and feasibility of routes, . . . in connection with the uses to which the property has been (or may be) put, to determine whether the claimant or [its] patrons, previously in a reasonable relation to a road system reaching the property, have now been left without such a relation." *Ibid.* "[Massachusetts] decisions have not erred on the side of lenience [in these cases]." *Id.* at 79.

In its brief, the plaintiff relies heavily on *Betty Corp.* v. *Commonwealth*, 354 Mass. 312 (1968), a statutory injury case brought pursuant to statutes authorizing payment for damages connected with the elimination of grade crossings. See G. L. c. 159, §§ 70, 75; G. L. c. 79, § 12. In *Betty*, the Commonwealth "directed that a railroad grade crossing on Western Avenue, Lowell, be closed to all traffic by placing barriers . . . for the full width of Western Avenue." *Betty Corp.* v. *Commonwealth*, *supra* at 314. This action resulted in a "practical impossibility to maneuver or back standard truck box trailers . . . to [Betty's] old loading platform." *Id.* at 316. The Supreme Judicial Court held that "the deprivation of reasonable truck highway access to [two of Betty's buildings] caused damage to Betty in a manner, and of a type, wholly different from the injury suffered by the public generally from the discontinuance of a part of Western Avenue." *Id.* at 318.

Despite the obvious factual similarities to the present case, *Betty* is distinguishable. There, "the jury were warranted in concluding that Betty . . . owned the fee to the avenue's center line." *Id.* at 317 n.2. "This fee interest . . . included a triangular area [of road,] north of [and cut off by] the westerly barrier," *id.* at 317, where the trucks had been parking. Although Betty's ownership interest was "subject to the city's easement of travel over Western Avenue and subject also to the railroad's easement to cross the area with its tracks," *ibid.*, such easements would not have included the right to erect barriers across the road.

The plaintiff's argument to the contrary notwithstanding, Betty's ownership interest is relevant to the determination that the injury to its property was special and peculiar. The barriers denied Betty access from one part of its property to another, *id.* at 318, a "direct, peculiar injury to an important part of Betty's parcels," *id.* at 319, that was not shared by other abutters to the road. By contrast, the plaintiff had no possessory interest in the part of Northern Avenue on which the trucks parked. Nor could long use establish such an interest. See G. L. c. 86, § 3 ("If the boundaries of a public way are known or can be made certain by records or monuments, no length of possession, or occupancy of land within the limits thereof, by the owner or occupant of adjoining land shall give him any title thereto . . ."); *Chelsea Yacht Club* v. *Mystic River Bridge Authy.*, 330 Mass. at 568. Moreover, as the plaintiff acknowledges, its access to its loading docks was not completely eliminated. The data on truck use the plaintiff included in the record reflect activity on its busiest days, and include a number of smaller trucks.

Although the facts in *Betty* are superficially similar to those here, reviewed in light of the case law, and the factual differences, we conclude that the plaintiff's damages were not special and peculiar. "[O]nly the loss of access . . . should be paid for, and not [for example] the advantage the land owner had had the luck to enjoy of being where the crowd was," *Stanwood* v. *Malden*, 157 Mass. 17, 19 (1892) (Holmes, J.), having a view, *ibid.*, or, as here, being adjacent to a wide, unimproved public road. Other businesses on Northern Avenue had to contend with the same changes in the road. See and compare *Wine* v. *Commonwealth*, 301 Mass. 451, 458 (1938) (barriers shutting off all

access to plaintiff's business constituted special and peculiar damages), with *Chelsea Yacht Club* v. *Mystic River Bridge Authy., supra* at 568 (removal of Chelsea North Bridge following construction of Mystic River Bridge, leaving plaintiff's club house surrounded by water two hundred feet from land, "[did] not fall within the authorization to sue conferred upon a 'person damaged in his property' by St. 1946, c. 562, § 14"); *Tassinari* v. *Massachusetts Turnpike Authy.*, 347 Mass. at 224, 225 (loss of business resulting from closing one end of street, such that "only means of egress was to back up the length of the street," not special and peculiar but "same in kind as that of the general public, although . . . relatively great in degree," quoting from *Hyde* v. *Fall River*, 189 Mass. 439, 440 [1905]); *Miczek* v. *Commonwealth*, 32 Mass. App. Ct. at 109 (State highway straightening project leaving plaintiffs' property on secondary road, forcing them to choose between converting their highway farm stand to wholesale operation and relocating stand, not compensable). Contrast *Webster Thomas Co.* v. *Commonwealth*, 336 Mass. 130, 133-134 (1957) (petitioners' claims of special and peculiar damages allowed where demolition of adjacent buildings for construction of Central Artery exposed interior walls of petitioners' buildings, subjecting them to damage from exposure to weather).

The plaintiff also argues that the cost of unloading on adjacent property, which was not available for sale or long term lease, was impractical and burdensome, and seeks damages for moving expenses and lost business. This claim fails to recognize that the measure of damages in these cases is the loss "in the value of the real estate involved in reference to the uses for which it was adapted," not the loss of business. *Wine* v. *Commonwealth, supra* at 458-459. (We note in this connection that the plaintiff's claim for relocation expenses is not before us.)

*Conclusion.* For the reasons set out above, the plaintiff is not entitled to compensation for either a constructive taking of or a statutory injury to its property. We therefore affirm the Superior Court judgments dismissing the complaint against each defendant. We also reject the Commonwealth's assertion that

the plaintiff's appeal was frivolous. In view of our conclusions, we need not discuss the defendants' remaining arguments.

*Judgments affirmed.*