NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1428

FLIGHTLEVEL NORWOOD, LLC, & others.[1]

vs.

BOSTON EXECUTIVE HELICOPTERS LLC, & others[2] (and a companion case[3]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

These consolidated cases involve sublessees of two

adjoining parcels of land known as Lots F and G at the Norwood

Memorial Airport.  Plaintiff FlightLevel Norwood, LLC, is a

fixed-base operator (FBO) at the Norwood Memorial Airport.  The

defendants also sought to attain FBO status, and wanted to use,

over the plaintiffs' objection, the taxiway running along their

_____

[1] EAC Realty Trust II; and Peter Eichleay, trustee of EAC Realty Trust II.

[2] Christopher Donovan and Robert Silva.

[3] Boston Executive Helicopters LLC; MII Aviation Services LLC; and HB Holdings Inc. vs. FlightLevel Norwood, LLC; EAC Realty Trust II; and Peter Eichleay.

common border located on Lot G (F/G taxiway).[4]  After numerous incidents, the parties filed separate lawsuits that were consolidated in the trial court.

Following a summary judgment decided largely in the plaintiffs' favor, including the grant of declaratory and injunctive relief,[5] the plaintiffs' three remaining claims were tried to a jury.  Answering special questions, the jury found that Boston Executive Helicopters LLC and employees Christopher Donovan and Robert Silva trespassed[6] on the plaintiffs' leasehold and that all three were negligent.  With respect to the G. L. c. 93A, § 11 claim, the jury found that those three defendants committed unfair acts or practices in the conduct of business that caused a loss to FlightLevel, and further that the unfair acts or practices of two of the three defendants, Boston Executive Helicopters LLC and Donovan, were "willful and knowing."  The jury awarded FlightLevel single damages of $13,757.11 for all claims.  After further proceedings, the trial

---

[4] For ease of reference, we shall refer hereinafter to the plaintiffs in this decision, as the special questions did, collectively as FlightLevel.  Five parties positioned on the other side have participated in this appeal.  We shall refer to them collectively as the defendants.

[5] As herein relevant, the judge ordered and declared that the defendants had no right under the use agreements to use the F/G taxiway located on Lot G.

[6] Silva was found liable for one instance of trespass while Donovan and the company were found liable for two.

2

judge awarded to FlightLevel treble damages, attorney's fees, and costs.

A consolidated judgment that incorporated the declaratory judgment subsequently entered in favor of the plaintiffs.  A different judge denied the defendants' postjudgment motions.  We reverse so much of the consolidated judgment as holds the defendants liable for violation of G. L. c. 93A.  In all other respects, the consolidated judgment is affirmed.

Background.  Since 1967, Boston Metropolitan Airport, Inc., (BMA) has leased Lots F, G, and a portion of Lot H (prime lease) at the Norwood Memorial Airport from the town of Norwood, through the Norwood Airport Commission (NAC).  Thereafter, the leasehold interests in these lots passed to several different entities through a number of subleases and legal agreements. EAC Realty Trust II[7] is the current sublessee of Lot G, on which it owns a hangar; EAC Realty Trust II currently subleases helicopter and office space in the hanger to MII Aviation Services LLC (Boston Executive Helicopters LLC's parent company) and an affiliated company, HB Holdings Inc.  Boston Executive Helicopters LLC is the current sublessee of Lot F and also maintains a hangar on its leasehold.

---

[7] FlightLevel Norwood, LLC, owns one hundred percent of the beneficial interest in EAC Realty Trust II, and Peter Eichleay is the sole trustee of that trust.

The jury could have found the following facts. In July 2014, the defendants ripped up and repaved some of Lot G without FlightLevel's consent and then refused to disclose the load-bearing capacity of the new asphalt, causing FlightLevel to avoid using that area for travel by heavy trucks. Additionally, in the winter of 2015, the defendants plowed Lot G without permission on several occasions, including one instance where an enormous wall of snow was built, blocking FlightLevel's access to its fuel farm. Soon thereafter, the defendants overturned barriers filled with water and propylene glycol that FlightLevel had placed on Lot G along the border with Lot F to protect its property line. Finally, the defendants openly and regularly filmed FlightLevel's employees.

Discussion. 1. Chapter 93A, § 11. The defendants argue that the trial judge erred in denying their motion for judgment notwithstanding the verdict (judgment n.o.v.) with respect to FlightLevel's G. L. c. 93A, § 11 claim. We agree.

"The denial of a motion for judgment n.o.v. presents a question of law reviewed under the same standard used by the trial judge." Dakin v. OSI Restaurant Partners, LLC, 100 Mass. App. Ct. 92, 95 (2021). "[W]hether conduct found to be unfair or deceptive rises to the level of a chapter 93A violation is a question of law" (quotation and citation omitted). H1 Lincoln, Inc. v. South Washington St., LLC, 489 Mass. 1, 14 (2022).

4

General Laws c. 93A, § 2 (a), prohibits both "[u]nfair methods of competition" and "unfair or deceptive acts or practices" occurring "in the conduct of any trade or commerce."[8] General Laws c. 93A, § 11, "applies these prohibitions to dealings between those 'engage[d] in trade or commerce.'" H1 Lincoln, Inc., 489 Mass. at 14. Although FlightLevel's amended complaint asserted claims under both prongs of § 2 (a), FlightLevel waived the unfair competition theory at trial, presumably for strategic reasons.[9] Specifically, FlightLevel proceeded on the theory that the defendants "engaged in unfair acts to exercise dominion and control over FlightLevel's leasehold for the purpose of advancing [the defendants'] commercial interests and deliberately interfering with the

[8] The statute defines "trade" and "commerce" to include "the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, any security . . . and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate," and "any trade or commerce directly or indirectly affecting the people of this commonwealth." G. L. c. 93A, § 1 (b). No claim is made that any of these categories of conduct is applicable here.

[9] Had the plaintiffs pursued the unfair competition theory, they would have risked opening the door to evidence the trial judge had excluded, in limine, related to the defendants' allegations that it was the plaintiffs who had engaged in restraint of trade, monopolization, and unfair competition.

5

commercial operations of FlightLevel.[10]  The defendants argue that in order to state a claim under G. L. c. 93A, § 11, under the theory of unfair deceptive acts and practices, a business must show more than that it was the victim of unfair practices by another business engaged in trade or commerce.  Rather, the aggrieved business must show that it engaged in a not "insignificant" business transaction with the second business and also that the unfair practices arose out of the business transaction.  Pointing to the plain language of G. L. c. 93A, §§ 2 (a) and 11, which are silent on the issue, FlightLevel argues that G. L. c. 93A liability could attach in the absence of a particular business transaction or marketplace exchange with the defendants.  We agree with the defendants that when the theory of c. 93A liability is unfair and deceptive acts and practices, those acts must occur within the parties' business relationship.

While the statutory language makes no express reference to "transaction," the Supreme Judicial Court has construed the elements of a business-to-business G. L. c. 93A, § 11, claim to

_____

[10] FlightLevel's attorney described the defendants' "unfair acts" as repeated bullying designed to try to take over FlightLevel's Lot G lease through the physical acts of "tearing up the pavement," plowing and creating a giant wall of snow, and "tipping over the barriers" placed by FlightLevel on Lot G.  The evidence of the second two acts formed the basis of FlightLevel's successful trespass and negligence claims.

require a showing not only that the offending "conduct occur[red] in 'trade or commerce' but also that there be a commercial transaction between the parties."  Rafferty v. Merck & Co., 479 Mass. 141, 162 n.7 (2018) (noting that G. L. c. 93A, § 11, business against other business claim requires commercial transaction between parties).  See Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563-565 (2008) ("applicability of G. L. c. 93A, § 11, requires a dual inquiry whether there was a commercial transaction between a person engaged in trade or commerce and another person engaged in trade or commerce, such that they were acting in a 'business context'"; concluding plaintiff's discussions with successor corporations in effort to secure repayment of trade debt did not satisfy criteria for viable c. 93A claim); Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 22-25, cert. denied, 522 U.S. 1015 (1997) (interaction between parties involving contract was not an intra-enterprise dispute but a commercial transaction for purposes of c. 93A; noting "[t]rade" and "commerce" include "the sale, rent, lease or distribution of any services and any property" and reviewing transaction between parties); Szalla v. Locke, 421 Mass. 448, 451-452 (1995) (finding no commercial transaction as required by c. 93A where parties entered into private arrangement to form business and never exchanged goods or services with each other); Stop & Shop Supermkt. Co. v.

7

Loomer, 65 Mass. App. Ct. 169, 175-176 (2005) ("To be actionable under G. L. c. 93A . . ., the conduct complained of must occur in a context in which the parties to the transaction are persons engaged in 'trade or commerce' with each other and therefore 'acting in a business context'"; supermarket employee and her husband cashing checks for husband's business knowing funds were insufficient is not qualifying business-to-business transaction [citation omitted]).

In support of its argument that a particular commercial transaction between the parties is not a requirement of a c. 93A, § 11 claim, FlightLevel relies on 477 Harrison Ave., LLC v. JACE Boston, LLC, 477 Mass. 162 (2017) (Harrison I), S.C., 483 Mass. 514 (2019) (Harrison II). These cases are distinguishable. To start, these were anti-SLAPP cases that considered whether the parties were entitled to dismissal of the respective claims and counterclaims asserted against them by satisfying the requirements of the anti-SLAPP statute. See G. L. c. 231, § 59H. All statements of the court in these opinions about "colorable" and "not devoid of merit" G. L. c. 93A claims must be understood in that context.

With specific regard to the plaintiff's c. 93A claim in Harrison I, the Supreme Judicial Court examined all of the bases underpinning the claim and concluded that where the claim rested in part on a substantial nonpetitioning basis -- the defendants'

8

filing of false insurance claims -- the defendants could not show that the plaintiff's claim was based solely on their petitioning activity.  Harrison I, 477 Mass. at 171.  Accordingly, the court concluded that the defendants could not meet their threshold burden with respect to the c. 93A claim to qualify for its dismissal under G. L. c. 231, § 59H.  Harrison I, supra at 172.  The case said nothing about the "trade or commerce" requirement or the applicability of c. 93A.[11]  In fact, the court made sure to explain that it was not deciding whether the plaintiff had stated an adequate G. L. c. 93A claim for relief.  See Harrison I, supra at 171 n.11 ("A special motion to dismiss under the anti-SLAPP statute, unlike a motion to dismiss brought under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 [1974], does not test the sufficiency of [a claim]").  In Harrison II, the court similarly disavowed testing the legal adequacy of the G. L. c. 93A claim.  See Harrison II, 483 Mass. at 522 n.3.  Applying relevant precedent requiring proof of a commercial transaction, and finding no support in Harrison I or Harrison II for FlightLevel's position, we conclude that G. L. c. 93A is inapplicable here.  The defendants' improper behavior could not

---

[11] While the court did mention the trade or commerce requirement in Harrison II, it did not reach the issue, and instead "[a]ssum[ed], for purposes of discussion," that, as the plaintiff alleged, the parties were engaged in trade or commerce.  Harrison II, 483 Mass. at 528.

9

support c. 93A, § 11, liability where there was no business transaction between the parties.  The judge thus erred by denying the defendants' motion for judgment n.o.v. with regard to that claim.[12]

2.  Summary judgment.  "Summary judgment is appropriate where there is no material issue of fact in dispute and the moving party is entitled to judgment as a matter of law" (citation omitted).  Business Interiors Floor Covering Business Trust v. Graycor Constr. Co., 494 Mass. 216, 220 (2024).  The respective parties' rights to use the F/G taxiway turn on the interpretation of unambiguous contracts and leases, presenting questions of law.  See Lumber Mut. Ins. Co. v. Zoltek Corp., 419 Mass. 704, 707 (1995).  Our review of the judge's legal conclusions is de novo.  See Business Interiors Floor Covering Business Trust, supra.

On appeal, the defendants primarily focus on the two use agreements as sources of their rights, arguing that the motion judge erred by concluding that the agreements granted nontransferable, "reciprocal licenses."

The first, undated use agreement was entered into by Stol Aircraft Corporation (Stol), a sublessee of Lot F, and Hangar

_____

[12] Having concluded that the defendants were entitled to judgment n.o.v. with respect to the G. L. c. 93A judgment, we need not address their other claims of error regarding it.

10

Nominee Trust (Hangar Trust), a sublessee of Lot G.  At the time, Hangar Trust intended to construct a hangar on Lot G and to use the westerly portion of Lot G as a taxiway.  Stol granted Hangar Trust the right to pave and to use a fifteen foot strip of land on Lot F as part of Hangar Trust's taxiway "for the balance of the term of [Stol's] lease."  In return, Hangar Trust granted Stol the right, upon the F/G taxiway's completion, to use it "as a taxiway[], in connection with [Stol's] own business . . . for as long as [Hangar Trust] continue[d] to utilize the westerly portion of Lot G for that purpose, or for the term of [Stol's] lease, whichever [was longer]."  BMA and NAC approved the "arrangement outlined in the letter."

The second use agreement, dated January 30, 1996, was entered into with BMA's consent by Swift Aviation, Inc. (Swift Aviation), the successor to Stol's leasehold interest in Lot F, and EAC Realty Trust II, which had acquired Hangar Trust's leasehold interest in Lot G.  Swift Aviation granted to EAC Realty Trust II a nonexclusive right to use the fifteen foot strip of land on Lot F for "use as a taxiway and for access to and egress from Lot G . . . for so long as the [Stol-BMA] sublease (or any extensions or subsequent agreements with respect to the use of Lot F) remain[ed] in effect."  In exchange, EAC Realty Trust II granted to Swift Aviation the right to use the portion of the F/G taxiway on Lot G, "as a

11

taxiway only in connection with [Swift Aviation's] own business . . . for as long as EAC [Realty Trust II] continues to utilize such portion of Lot G for that purpose, or for the term of the Sublease, whichever is greater."  In addition, EAC Realty Trust II agreed not to assign its rights in the agreement without the written consent of Swift Aviation.[13]

In 2011 Swift Aviation sold its leasehold interest in Lot F to Boston Executive Helicopters LLC.  In October 2012 and March 2013, Swift Aviation assigned its rights under the Stol-BMA sublease, which had been extended to May 31, 2029, to Boston Executive Helicopters LLC.  BMA agreed to amend the sublease to Lot F to permit Boston Executive Helicopters LLC to "store, use and sell" aviation fuel, conditioned on it obtaining all necessary approvals.

The defendants' rights turn on the proper characterization of the use agreements.  If the use agreements granted property rights, they ran with the land and were fully assignable, whereas if they granted mere reciprocal licenses personal to the parties, they were neither incorporated into the Lot F and G subleases nor assignable.  See Baseball Pub. Co. v. Bruton, 302

---

[13] Following FlightLevel Norwood, LLC's purchase of EAC Realty Trust II's assets, Swift Aviation acknowledged and agreed that the second use agreement "would continue in full force and effect."

12

Mass. 54, 55 (1938) ("A lease of land conveys an interest in land" whereas a license "merely excuses acts done by one on land in possession of another that without the license would be trespasses, conveys no interest in land, and may be contracted for"). The defendants argue that the use agreements were "easements or otherwise assignable." We conclude that the nonexclusive, reciprocal rights granted to the individual parties pursuant to the use agreements were licenses. See Kaplan v. Boudreaux, 410 Mass. 435, 442-443 (1991), overruled on other grounds by St. 1998, c. 242, § 5 (condominium bylaw that granted certain exclusive rights to owners of one particular condominium unit as opposed to personal rights transferred interest in land); Chelsea Yacht Club v. Mystic River Bridge Auth., 330 Mass. 566, 567-568 (1953) (license granted to particular yacht club to construct club house on piles driven into Mystic River upon Commonwealth land provided club with no interest in land that could serve as authorization to sue for subsequent damage to property); Scioscia v. Iovieno, 318 Mass. 601, 603 (1945) (permission granted to defendants by Marshall, plaintiffs' predecessor in title, to extend clothes reels over Marshall's and his wife's adjoining land "did not give the defendants any easement or other interest in that land," but rather constituted license that was terminated by subsequent conveyance of adjoining land by Marshalls to plaintiffs); Rogel

13

v. Collinson, 54 Mass. App. Ct. 304, 313-315 (2002) (finding no error in judge's determination that easement reserved by grantor Nelson was easement in gross and personal to Nelson that could not be assigned or transferred by Nelson -- as opposed to easement appurtenant to stable or other lot).

Here, there is no language in the use agreements suggesting the rights were intended to be appurtenant to the lots such that the rights would pass to successor leaseholders.[14] To the contrary, several aspects of the agreements demonstrate that the agreements were intended to be licenses personal to the holders of the leasehold interests. For example, the reciprocal rights of use were granted not for the benefit of Lots F and G, but rather to the individual holders of the subleases at the time the use agreements were signed. The first use agreement restricted Stol's right to use the portion of the F/G taxiway on Lot G to uses "in connection with [Stol's] own business" and use "as a taxiway." The second use agreement placed similar restrictions on Swift Aviation's right to use the portion of the F/G taxiway located on Lot G.[15] As the motion judge noted,

---

[14] Neither use agreement contained the words "appurtenant to," "run with the land," or "easement," and neither was recorded. By way of contrast, the Hangar Trust-BMA sublease agreement contained nondiscrimination covenants that expressly ran with the land.

[15] Stol's and Swift Aviation's businesses did not include the storage or sale of aviation fuel, uses that were expressly

14

neither the prime lease between the town of Norwood and BMA nor the Stol-BMA and Hangar Trust-BMA subleases conferred reciprocal rights of use. Indeed, the F/G taxiway did not exist until after the first use agreement was negotiated between Stol and Hangar Trust. By attempting to negotiate a use agreement with FlightLevel after purchasing the Lot F leasehold interest, Boston Executive Helicopters LLC demonstrated that it, too, regarded the rights as not being appurtenant to Lots F and G.[16] See Rogel, 54 Mass. App. Ct. at 313-314.

The language in the use agreements stating that the agreements lasted for set durations and thus were not revocable at will -- characteristics of an easement -- does not compel a determination that the use rights were transferrable if the subleases were assigned. Cf. Scioscia, 318 Mass. at 603. A legal document granting use rights may "contain some characteristics of an easement or a lease, which are interests

---

prohibited on Lot F by the Stol-BMA sublease and subsequent indenture. As successor and assignee of Stol's leasehold interest in Lot F, Swift Aviation was bound by these restrictions, an obligation that passed to Boston Executive Helicopters LLC upon its acquisition of Swift Aviation's assets.

[16] By entering into the second use agreement and the "acknowledgement of [second use] agreement," the subsequent holders of the leasehold interests in Lots F and G also manifested the understanding that the reciprocal rights to use the F/G taxiway were not part of their leasehold rights under the subleases.

in land, and some characteristics of a license, which is not an interest in land." Kaplan, 410 Mass. at 442. Language cannot be read in isolation but must be considered in the context of the entire agreement. See RCS Group, Inc. v. Lamonica Constr. Co., 75 Mass. App. Ct. 613, 620 (2009). As the motion judge noted, the second agreement limited Swift Aviation's right to use the F/G taxiway on Lot G to its own business. Once Swift Aviation ceased operations and stopped using the taxiway "in connection with its own business" at the time it sold its assets to Boston Executive Helicopters LLC, the use agreement terminated. To the extent that the defendants point to the fact that the second use agreement imposes no restrictions on Swift Aviation's right to assign the agreement, the agreement granted no such right to Swift Aviation either. Assignment rights were a matter of contract negotiation, and while EAC Realty Trust II was successful in acquiring express assignment rights, Swift was not. The defendants' argument, moreover, is inconsistent with the plain language of the second use agreement that restricted the use of the F/G taxiway on the westerly portion of Lot G to Swift's own business.

Where the right of use at issue here was created by the use agreements, the general rule in commercial lease cases that assignment is permitted absent a provision restricting it, see, e.g., Valley Oil Co. v. Barberian, 344 Mass. 759 (1962), does

16

not apply here.  Nor may the "Estoppel Certificate/Clarification Agreement" dated January 24, 1996, between EAC Realty Trust II, Hangar Trust, and BMA be read to have "effectively assigned" Stol's rights under the first use agreement.  That agreement pertained to Hangar Trust's rights in Lot F and did not purport to assign Stol's reciprocal rights in Lot G.  Moreover, when Stol had earlier assigned its leasehold interest in Lot F to Swift Aviation, the assignment and assumption agreements did not include or even reference the first use agreement.  Stol assigned no rights to use Lot G to Swift Aviation.  As the motion judge noted, leaseholders may not amend their subleases to add rights that were not conferred on them in their subleases.  Swift Aviation's business ended on December 9, 2011, the day it sold its leasehold interest to Boston Executive Helicopters LLC.  When Swift Aviation entered into the October 2012 and March 2013 assignment, assumption, and amendment of lease agreements, it no longer had any rights or interests under the second use agreement to assign.  As such, these agreements transferred no rights to use the F/G taxiway on Lot G to the defendants.  In short, we find no error in the judge's analysis and reject the defendants' construction of the agreements.  Accordingly, the judge did not err in denying this aspect of the defendants' motion for judgment n.o.v.  As we have determined that the summary judgment order was correct, the defendants'

17

derivative claims of error relating to the "incorrect" order necessarily fail.

3. Other issues. We discern no abuse of discretion or prejudicial error in the judge's decision to issue an "omnibus" pretrial order with respect to FlightLevel's seven separate motions in limine. The judge was not required to wait until each piece of evidence was offered to rule. In any event, the defendants acknowledge that the evidence at issue pertained primarily if not exclusively to FlightLevel's G. L. c. 93A claim, as to which we have already ruled in the defendants' favor on another ground, supra. The defendants' one-sentence argument that the trespass and negligence verdicts were against the weight of the evidence does not rise to the level of adequate appellate argument. See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019). Were we to reach the merits, we would find no abuse of discretion in the denial of the motion for new trial. See Doull v. Foster, 487 Mass. 1, 5 (2021). The verdicts and damage awards were amply supported by the evidence, including the testimony of Peter Eichleay and videotape evidence.

Conclusion. Paragraph 3, under the heading "In 1582CV01637," of the consolidated judgment is vacated and the matter is remanded for the entry of judgment in favor of Boston Executive Helicopters LLC, Christopher Donovan, and Robert Silva

on the plaintiffs' G. L. c. 93A claim.  The consolidated judgment is otherwise affirmed.  The consolidated order denying the motion for judgment n.o.v. is affirmed with respect to the summary judgment and reversed with respect to the G. L. c. 93A claim.  The consolidated order denying the motion for a new trial is affirmed.

So ordered.

By the Court (Henry, Sacks &
   Singh, JJ.[17]),

Clerk

Entered:  February 12, 2025.

---

[17] The panelists are listed in order of seniority.